IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOSEPH PURANDA,

    Petitioner,

v.                                         Civil Action No. 3:08CV687

GENE JOHNSON,

    Respondent.

## MEMORANDUM OPINION

Petitioner Joseph Puranda, a Virginia state prisoner proceeding *pro se*, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Puranda challenges the deprivation of his liberty interest in earned sentence credits ("ESCs") in violation of the Fourteenth Amendment.[1] Respondent filed a motion to dismiss and appropriate *Roseboro*[2] notice. Puranda responded, and the matter is ripe for disposition. Jurisdiction is proper pursuant to 28 U.S.C. §§ 636(c) and 2254.

## I. Background

In 1994, the Commonwealth of Virginia created a system of ESCs applicable to felony offenses committed on or after January 1, 1995.[3] Under Va. Code Ann. § 53.1- 202.2 (2008), "[e]very person who is convicted of a felony offense committed on or after January 1, 1995, and who is sentenced to serve a term of incarceration in a state or local correctional facility shall be

---

[1] *See* U.S. Const. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . .").

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

[3] The ESC system replaced the prior system of sentence credits which awarded Good Conduct Allowances (GCAs). *See* Va. Code Ann. § 53.1-199.

eligible to earn sentence credits in the manner prescribed . . . ." The statute defines ESCs as "deductions from a person's term of confinement earned through adherence to [statutory] rules . . . through program participation . . . and by meeting such other requirements as may be established by law or regulation." *Id.* Va. Code Ann. § 53.1-202.4 requires the Virginia Board of Corrections ("the Board") to establish the rules and regulations needed to implement the statute. At present, the Board's Department Operating Procedure No. 830.3 ("DOP 830.3") implements Virginia's ESC statutes.

DOP 830.3 establishes four class levels for earning ESCs. ESCs accrue at various rates depending upon a prisoner's classification. Level I inmates earn the highest possible ESCs: 4.5 days for every 30 days served. Level II inmates earn 3 days for every 30 days served. Level III inmates earn 1.5 ESCs for every 30 days served. Level IV inmates do not earn ESCs. (DOP 830.3, VIII(B)) (Feb. 1, 2007). All offenders who entered the system prior to January 1, 2003, as Puranda did, were assigned class Level II upon entry. (DOP 830.3, IV(B)(2)) (Feb. 1, 2007).

On August 22, 2000, Puranda entered the Virginia Department of Corrections ("VDOC") system. (Petr.'s Br. ¶ 2.) His aggregate sentence for multiple crimes[4] amounted to 15 years, 12

---

[4] Puranda's convictions include: (1) Possession of cocaine with intent to distribute (James City Circuit Court. March 27, 1996). Suspension revoked on May 11, 2000; (2) Forgery, attempted kidnapping (Portsmouth Circuit Court. January 6, 1998). Suspension revoked November 29, 1999; (3) Failure to appear (Newport News General District Court. November 12, 1999); and, (4) Malicious wounding, use of a firearm in a felony, domestic assault – third offense, assault and battery, petty larceny, possession of a firearm by a felon, firing into a dwelling. (Portsmouth Circuit Court. March 14, 2000). (Petr.'s Br. Ex. C ¶ 5-8.)

months, and 70 days of imprisonment.[5] (Petr.'s Br. Ex. C ¶ 4.) At the commencement of his confinement, VDOC advised Puranda of an expected release date of May 6, 2014.

On August 22, 2002, VDOC reclassified Puranda to Level I ESC status. (Petr.'s Br. ¶ 3; Respt.'s Mem. Supp. Rule 5 Ans. & Mot. Dismiss ("Respt.'s Mem.") ¶ 7). On September 26, 2002, Puranda received a Uniform Commitment Report informing him of his reclassification and revised release date of October 31, 2013. (Respt.'s Mem. Ex. I (Uniform Legal Update Sheet (Ex. 1 to Petr.'s State Habeas Pet., Record No. 072433)).) (Docket No. 7.) Puranda's new release date assumed continued classification at Level I and no loss of ESCs for misbehavior.

One year after reclassification to Level I, and following his 2003 review,[6] Puranda disputed his ESC calculation. In correspondence with VDOC officials, Petitioner argued that VDOC incorrectly classified him at Level II upon his initial intake. Puranda asserted he should have been classified Level I from his first day of incarceration. According to Puranda's math, had he been correctly classified at Level I on August 22, 2000, his release date would be in late April of 2012, approximately sixteen months earlier than VDOC's calculation of his expected release date. (Petr.'s Br. 5.)

On January 13, 2004, VDOC responded to Puranda's claim with a memo confirming his classification history and reiterating his October 31, 2013,[7] release date. (Respt.'s Mem. Ex. I

---

[5] VDOC awarded Puranda 295 days credit for time served at the Hampton Roads City Jail and 11.25 days credited for good conduct. (Petr.'s Br. Ex. C ¶ 10.)

[6] VDOC conducts inmate classification reviews annually, "in the same month as the offender's Initial Classification Date (ICD)." (DOP 830.3, V(E)) (Feb. 1, 2007).

[7] Upon the August 22, 2002 reclassification from Level II to Level I, Puranda's calculated release date was October 31, 2013. On December 20, 2007, however, a re-calculation under the Virginia Coris Offender Sentence Calculation System resulted in a revised release date nine days

3

(Memo from Michael Combs (Ex. 3 to Petr.'s State Habeas Pet., Record No. 072433)).) (Docket No. 7.) Puranda appealed for a second time on the same issue, and on September 28, 2006, VDOC again denied his claim. (Respt.'s Ex. I (Letter from Doris Ewing (Ex. 3 to Petr.'s State Habeas Pet., Record No. 072433)).) (Docket No. 7.)

On November 29, 2007, Puranda filed a writ of habeas corpus in the Supreme Court of Virginia. On May 28, 2008, the Supreme Court of Virginia dismissed Puranda's petition as untimely filed pursuant to Virginia Code § 8.01-654(A)(2).[8] *Puranda v. Dir., Dep't Corr.*, Record No. 072433 (Va. May 28, 2008). On September 17, 2008, the Supreme Court of Virginia denied Puranda's petition for rehearing. At no point did the Supreme Court of Virginia address the substance of Puranda's petition.

## II. Claim for § 2254 Relief

Petitioner claims entitlement to relief for lack of due process. Specifically, Petitioner claims a protected liberty interest in classification at ESC Level I, with the consequent maximum ESC earning rate, from his first day in VDOC custody. On October 24, 2008, Puranda filed this § 2254 petition for writ of habeas corpus, asserting the following claim:

| | |
|---|---|
| Claim One: | The Commonwealth of Virginia provided a statutory right to ESCs that is "included in that 'liberty' protected by the Fourteenth Amendment." (Petr.'s Br. 3.) Consequently, Petitioner is entitled to procedural due process to ensure "the State-created right is not arbitrarily abrogated." *Id.* |

---

earlier than previously noted: October 22, 2013. This October 22, 2013 date reflects Puranda's accurate release date. (Respt.'s Mot. Dismiss Petr.'s State Habeas Pet. Record No. 072433 Ex. 1 (Brown Aff. 4, 16).)

[8] "A petition for writ of habeas corpus ad subjiciendum, other than a petition challenging a criminal conviction or sentence, shall be brought within one year after the cause of action accrues." Va. Code § 8.01-654(A)(2).

4

No dispute exists that Puranda properly exhausted this claim. (Respt.'s Mem. ¶ 2.) Respondent contends, *inter alia*, that Petitioner's claim lacks merit. (Respt.'s Mem. ¶ 3.)

### III. Analysis

Puranda contends that VDOC denied him due process. The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). The first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *See Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). Liberty interests "may arise from the Constitution itself, by reason of guarantees implicit in the word liberty, . . . or [they] may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citations and quotations omitted). Petitioner does not enjoy any liberty interest directly under the Constitution in receiving ESCs in order to gain an early release from this prison sentence. *See Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *James v. Robinson*, 863 F. Supp. 275, 278 (E.D. Va. 1994) *aff'd*, No. 94-7136, 1994 WL 709646 (4th Cir. Dec. 22, 1994). Therefore, Petitioner must demonstrate that Virginia laws created the liberty interest to which he claims entitlement.

#### A. State-created Liberty Interests After *Sandin v. Conner*

In the wake of *Sandin v. Conner*, 515 U.S. 472 (1995), courts have employed a variety of methods for assessing the existence of a state-created liberty interest. Although many cases address the aspect of the relevant review needed to decide the case they address, this Court could not locate a case within the Fourth Circuit that systematically summarizes each step of inquiry necessary to evaluate a state-created liberty interest. In this Court's view, assessing whether a

5

state has created a liberty interest with respect to inmates proceeds in two steps, as described below. The first step seeks to assess whether the deprivation holds sufficient significance to warrant protection under the Fourteenth Amendment. The second step evaluates whether the language of the pertinent statute or regulation creates sufficient limits on official discretion such that it could be deemed to create a liberty interest. This Court proceeds below as appropriate under the relevant precedent.

1. **The *Sandin* Decision**

In *Sandin,* the Court concluded that its decision in *Hewitt v. Helms*, 459 U.S. 460 (1983), had created a largely unworkable scheme for assessing whether particular state regulations conferred liberty interests on inmates. 515 U.S. at 480. The Court explained that "[i]nstead of looking to whether the State created an interest of 'real substance,'" *id. (quoting Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)), *Hewitt* created a methodology that narrowly focused on the language of "rather routine prison guidelines" in search of liberty interests, *id.* Keeping in mind a desire to address issues of real substance, the Court concluded that state-created liberty interests for inmates "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484 (internal citations omitted). The Court also indicated that a deprivation may be substantial enough to implicate the Fourteenth Amendment if the deprivation "will inevitably affect the duration of [a prisoner's] sentence." *Id.*; *see Wolff,* 418 U.S. at 557 (concluding prisoner had protected liberty interest in avoiding deprivation of earned good time credits).

This Court does not read *Sandin* to have stripped away the requirement that in order to have a state-created liberty interest, a state law must create that interest.[9] The Supreme Court's explanation in *Sandin* that it was returning "to the due process principles we believe were correctly established and applied in *Wolff* and *Meachum*" makes that clear. *Id.* at 483 (*citing Meachum v. Fano*, 427 U.S. 215 (1976)). In *Meachum*, the Court rejected inmate claims that inmates had a liberty interest under the Fourteenth Amendment in avoiding transfer to a more highly restricted prison. *Meachum*, 427 U.S. at 224. The Court emphasized because "Massachusetts law conferred no right on the prisoner to remain in [a particular] prison, . . . . [t]he predicate for invoking the protection of the Fourteenth Amendment . . . is totally nonexistent in this case." *Id.* at 226.

2. **Summary of Inquiry for Assessing a State-created Liberty Interest**

In light of the foregoing precedent, Plaintiff must make a threshold showing that the deprivation imposed amounts to an "atypical and significant hardship" or that it "inevitably affect[s] the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005); *McGuinness v. Dubois*, 75 F.3d 794, 798 n.3 (1st Cir. 1996); *Orellana v. Kyle*, 65 F.3d 29, 32-33 (5th Cir. 1995). *Cf. Kitchen v. Upshaw*, 286 F.3d 179, 187 (4th Cir. 2002) (considering a possible liberty interest in prisoners' work-release status by analyzing whether denial imposed an atypical hardship and by examining statutory language, but not addressing any effect on the duration of the inmate's sentence). If the nature of the restraint Puranda challenges meets either prong of this threshold, he must next show that the statutory

---

[9] *See Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996) ("[N]othing in *Sandin* suggests that a protected liberty interest arises in the absence of a particular state regulation or statute that . . . would create one.").

7

language "grants its inmates . . . a protected liberty interest in remaining free from that restraint." *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000); *see Greenholtz*, 442 U.S. at 10-11; *Frazier*, 81 F.3d at 317; *Smith v. Johnson*, No. 7:08cv00514, 2008 WL 4960436, *3 n.2 (W.D. Va. Nov. 19, 2008). Because mandatory language might create a "right" when removing an agency's discretion, Courts generally evaluate whether the statute or regulation speaks in mandatory or permissive terms in order to make this determination.

### B. Analysis of Petitioner's Claim

Here, Petitioner contends that he was denied the right to earn, immediately at intake, the maximum amount of ESCs, 4.5 days for every 30 days served for the entire duration of his sentence. To the extent that such a right exists, its deprivation and the consequent diminishment in the amount of ESCs Petitioner has accumulated "inevitably affect[s] the duration of his sentence." *Sandin*, 515 U.S. at 487. Thus, Petitioner has satisfied the threshold showing for a state-created liberty interest specified in *Sandin*. *Wilson*, 430 F.3d at 1120.

Next, Petitioner must demonstrate that Virginia by its statutes or regulations created a liberty interest in earning the maximum amount of ESCs. *See Frazier*, 81 F.3d at 317; *cf. Kitchen*, 286 F.3d at 187 (analyzing relevant statutes and rejecting inmate's claim of liberty interest in work release). "A liberty interest protected by the Fourteenth Amendment must amount to more than an abstract need or desire, or a unilateral hope . . . ." *Gaston v. Taylor*, 946 F.2d 340, 344 (4th Cir. 1991) (citation omitted). State laws create a liberty interest only when the statute's language "plac[es] substantive limitations on official discretion." *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) (*quoting Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)). The

8

United States Court of Appeals for the Fourth Circuit explained the fairly exacting nature of this requirement in *Slezak* as follows:

> What this all comes to is that constitutionally protected liberty interests are only created by state law regimes which in the end effectively say to inmates: "If facts A, B, and C are established in an appropriate fact-finding process, you are thereupon legally entitled to a more favorable . . . classification than you presently have," or, "Unless facts A, B, and C are so established, you are legally entitled not to be placed in a less favorable classification than you now have."

*Id.* at 595. The state laws at issue here fall far short of this exacting requirement.

The pertinent statute provides that felons "shall be *eligible* to earn sentence credits" through "adherence to rules," "through program participation," and "by meeting such other requirements as may be established by law or regulation." Va. Code Ann. § 53.1- 202.2 (2008) (emphasis added). Va. Code Ann. § 53.1-202.4 (2008) grants nearly complete discretion for implementation of the ESC program to the Board. The statute and implementing regulation contain none of the mandatory language or circumscription of official discretion held to vest a liberty interest. *See Greenholtz*, 442 U.S. at 9. DOP 830.3 does not limit agency discretion to a degree that would vest a liberty interest in a Level I ESC classification for Puranda. Therefore, Puranda has no protected liberty interest in a particular ESC classification. *See DeBlasio v. Johnson*, 128 F. Supp. 2d 315, 330 (E.D. Va. 2000); *Smith v. Johnson,* No. 7:08cv00514, 2008 WL 4960436, at *3 (W.D. Va. Nov. 19, 2008); *Martin v. Johnson*, No. 7:08CV00249, 2008 WL 957869, at *4 (W.D. Va. Apr. 8, 2008). As a consequence, Puranda's claim fails.

## IV. Conclusion

For the foregoing reasons, VDOC's calculation of Puranda's release date constitutes a lawful act within the discretion of state officials. The court will grant Respondent's motion to dismiss. (Docket No. 6.) The petition will be DISMISSED.

An appropriate Order shall issue.

/s/ M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 9-30-09